# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>FRANCISCO GUTIERREZ (6),<br><br>　　　　　　　　　　Defendant. | CASE NO. 12-CR-236 - IEG<br><br>**ORDER DENYING FRANCISCO GUTIERREZ'S (6) MOTION TO SUPPRESS WIRETAP EVIDENCE AND DERIVATIVE EVIDENCE, AND REQUEST FOR A <u>FRANKS</u> HEARING**<br><br>[Doc. No. 796.] |

　　　　Presently before the Court are Defendant Francisco Gutierrez's (6) ("Defendant") motion to suppress wiretap evidence and derivative evidence, and request for a <u>Franks</u> hearing. [Doc. No. 796, <u>Def.'s Mot.</u>] The Government has filed a response in opposition to Defendant's motion. [Doc. No. 808, <u>Govt.'s Response</u>.]

　　　　Defendant argues that the interceptions conducted pursuant to the wiretap orders dated February 25, 2011, March 28, 2011, and April 18, 2011 were unlawful. [Doc. No. 796-1, <u>Def.'s Mot.</u> at 8.] Defendant presents two main arguments: (1) the affidavits contained material omissions such that a <u>Franks</u> hearing is warranted, and (2) the applications failed to meet the necessity requirement. Therefore, he believes that "[a]ll evidence derived, either directly or indirectly, from these interceptions must be suppressed." [<u>Id.</u>]

**I.　<u>Franks</u> Hearing**

　　　　"[T]he Fourth Amendment requires that a hearing be held at the defendant's request" "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the

warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 155-56 (1978). A defendant may request a hearing for material omissions as well. United States v. Stanert, 762 F.2d 775, 780-81 (9th Cir. 1985), modified 769 F.2d 1410 (1985). "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Franks, 436 U.S. at 156. This procedure also applies to wiretap applications. See United States v. Gonzalez, 412 F.3d 1102, 1111 (9th Cir. 2005).

In Franks, the Supreme Court established a two-prong test for challenging the sufficiency of a warrant affidavit. Franks, 438 U.S. at 155-56. However, "[t]he [Supreme] Court was careful . . . to avoid creating a rule which would make evidentiary hearings into an affiant's veracity commonplace, obtainable on a bare allegation of bad faith. It crafted, therefore, a rule of very limited scope." United States v. Chesher, 678 F.2d 1353, 1360 (9th Cir. 1982). "The movant bears the burden of proof and must make a substantial showing to support both elements." Chavez-Miranda, 306 F.3d at 979. If a defendant can make "an adequate initial showing of intentional or reckless material . . . omissions in the wiretap application," the district court should hold a Franks hearing. Gonzalez, 412 F.3d at 1111.

First, a defendant must make a "substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." Stanert, 762 F.2d at 781. "Clear proof" of a deliberate or reckless omission is not required at this stage. Id. "Given the assumption of validity underlying a supporting affidavit, a party moving for a Franks hearing must submit 'allegations of deliberate falsehood or of a reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.'" United States v. Chavez-Miranda, 306 F.3d 973, 979 (9th Cir. 2002) (quoting Franks, 438 U.S. at 171).

Secondly, a defendant must show materiality; that is, "the affidavit . . . supplemented by the omissions would not be sufficient to support a finding of probable cause." Stanert, 762 F.2d at

782 (citing Franks, 438 U.S. at 171-72.) "The effect of the . . . omissions on the existence of probable cause is considered cumulatively." Stanert, 762 F.2d at 782. Omissions are not material if the affidavit provides "sufficient circumstances to have a substantial basis for finding probable cause." United States v. Strifler, 851 F.2d 1197, 1201 (9th Cir. 1988).

Defendant alleges that the following facts were omitted from the affidavit: (1) the subscriber of target telephone 7, which was allegedly used by Defendant, was Defendant's wife; (2) the length of time that target telephone 7 had been activated; (3) Defendant had been in custody on the state weapons charge, which was mentioned in the affidavit, from May 4, 2010 until his release on bond on January 27, 2011; and (4) the conditions of Defendant's bond conditions, which included wearing a GPS bracelet to monitor his movements at all times, mandatory monthly drug testing, and once a month home visits by his parole officer. [Doc. No. 796-1, Def.'s Mot. at 10-11.]

Defendant then summarily states that "this pertinent information should have been given to the district court judge charged with the decision to determine if probable cause existed to tap Mr. Gutierrez' [sic] wife's cell phone, and whether the government had demonstrated as to this individual that the necessity prong has been proven so as to permit a wiretap of the phone under Title III." [Id. at 11.] He also states that if "these falsehoods and mis-statements" are excised from the affidavits, the affidavits standing alone "fail to fulfill the requirements of probable cause and necessity." [Id.]

**A.    First Prong: Affiant Intentionally or Recklessly Omitted Facts**

A defendant is required "to make a substantial showing that supports a finding of intent or recklessness." Gonzalez, 412 F.3d at 1111. "[B]are assertion[s] fall[] short of the preponderance of the evidence that Franks requires." Chavez-Miranda, 306 F.3d at 979. The defendant must provide evidence to support his claim that the omissions were reckless or intentionally misleading. See id. (denying Franks hearing when defendant "offer[ed] no evidence to support the claim that the omissions were reckless or intentionally misleading").

For example, the Ninth Circuit has found the requisite state of mind when the affiant had a "key role in the investigation" such that "he knew or should have known the veracity of the

challenged statements in his affidavit because these statements all concerned the potential of traditional investigative techniques to gather information." Gonzalez, 412 F.3d at 1111. The Ninth Circuit also found the requisite state of mind in Stanert, where the affidavit discussed an explosion that happened on the property the government sought to search, but failed to mention that the target individual did not live on the property when the explosion occurred. The Ninth Circuit concluded that the "nondislcosure of the previous ownership of the residence caused the information actually reported to be misleading, and that this nondisclosure was at least reckless." Id. at 781.

Defendant in the present case fails to substantially show that the nondisclosure of the information listed by Defendant in his motion is misleading or reckless. Because Defendant makes only "bare allegation[s] of bad faith," Cheser, 678 F.2d at 1360, the Court finds that Defendant fails to show that the affiant intentionally or recklessly omitted facts.

**B.      Second Prong: Materiality**

"Identifying intentional omissions and misstatements is not enough . . . to warrant a Franks hearing. [The defendant] also has to show that these deceptions are material." United States v. Meling, 47 F.3d 1546, 1554 (9th Cir. 1995). "In determining materiality, the pivotal question is whether an affidavit containing the omitted material would have provided a basis for a finding of probable cause." Chavez-Miranda, 306 F.3d at 979. In cases where the Ninth Circuit has found that defendants adequately made a preliminary showing that the wiretap applications contained material omissions, the omissions have directly impacted the finding of necessity and/or probable cause. See Gonzalez, 412 F.3d 1102; Stanert, 762 F.2d 775.

In the instant case, the omissions do not affect a finding of probable cause. In Stanert, the Ninth Circuit found that, in addition to several other omissions, it was misleading for the affidavit to state that a confidential informant said that the target was manufacturing cocaine, without providing the basis for the informant's conclusion. 762 F.2d at 782. The Court found that the statement implied that the informant had personally observed drug activity, when in reality, he was simply speculating. Id. at 780, 782. The Court found that the defendant was entitled to a Franks hearing because after excising the misstatements from the affidavit, it "failed to provide a

substantial basis for concluding that probable cause existed to search defendant's residence." Id. at 782.

However, in the instant case, Judge Burns, who signed the order for the wiretap, could have found probable cause even with the additional information listed by Defendant. The Government provided detailed information regarding the Mexican Mafia's "tax" payment system, and also gave information regarding Defendant's telephone conversations with individuals at detention facilities which the Government believes were about payments to co-defendant Sara Quintana [12CR0236-TIII-722.] and about narcotics sales within the detention facility [12CR0236-TIII-721.]. The Government also stated that nine text messages were exchanged between target telephone 7, which was used by Defendant, and target telephone 2, which was used by co-defendant Cynthia Varela, who, like Quintana, had been connected with facilitating "tax" payments to co-defendant Rudy Espudo. [12CR0236-TIII-700-01; 12CR0236-TIII-728.] The omissions listed by Defendant do not impact the aforementioned facts. Therefore, because Judge Burns could have found probable cause even if these omissions were included in the affidavit, they are not material. See Chavez-Miranda, 306 F.3d at 989 ("As the magistrate could have found probable cause even with mention of the [omitted fact] in the affidavit, its omission from the affidavit was not material.").

In the instant case, the omissions also do not impact a finding of necessity. In Gonzalez, the Ninth Circuit reviewed whether the affidavits contained material misstatements or omissions regarding the necessity for the wiretaps to determine if a Franks hearing was warranted. 412 F.3d at 1110-11. The Ninth Circuit found that the Government misrepresented the use of other investigative techniques, inaccurately portrayed the confidential informants as having less access to the targets than they actually possessed, and misrepresented the government's ability to use an undercover officer. Id. This information "related to the ability of customary investigative tools to produce the evidence sought by the government in its investigation." Id. at 1111. In the instant case, although Defendant was in custody until January 27, 2011, this does not affect the Government's showing of probable cause or necessity because the first wiretap application was made on February 25, 2011, which was after he was released on bond. [Doc. No. 796-1, Def.'s

Mot. at 10-11.] Furthermore, the conditions of Defendant's bond release do not affect the Government's showing of necessity. The Government stated in its application that traditional techniques such as monitoring the targets' movements were not producing the evidence it sought regarding the conspiracy. [12CR0236-TIII-728-43.] Therefore, the Government needed evidence of conversations, which could only be obtained at this point in the investigation by wiretap. [12CR0236-TIII-728.] Monitoring using a GPS bracelet, mandatory drug testing, and home visits by a parole officer would not have produced the evidence of the conspiracy sought by the Government. Therefore, these omissions do not "undermine the government's ability to prove the need for the . . . wiretap[s]." Gonzalez, 412 F.3d at 1111.

In light of the foregoing, the Court finds that Defendant did not meet his burden to demonstrate that the omissions were material. Because the Court finds that Defendant showed neither that the affiant intentionally or recklessly omitted facts nor that the omissions were material, the Court **DENIES** Defendant's request for a Franks hearing.

## II. Necessity Requirement

"To obtain a wiretap, the government must overcome the statutory presumption against this intrusive investigative method by proving necessity. Together, 18 U.S.C. § 2518(1)(c) and (3)(c) comprise the necessity requirement for wiretap orders." Gonzalez, 412 F.3d at 1112 (internal citations omitted). Under 18 U.S.C. § 2518(1)(c), the government's application for a wiretap must include a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The district judge reviewing the application must determine that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous" before issuing an order authorizing a wiretap. 18 U.S.C. § 2518(3)(c). "A district court must reject a wiretap application if law enforcement officers have not first attempted, without success, traditional investigative methods that easily suggest themselves and are potentially productive and not unduly dangerous." United States v. Carneiro, 861 F.2d 1171, 1176 (9th Cir. 1988).

The Ninth Circuit requires a "full and complete statement of specific allegations"

establishing the necessity of the wiretap sought. United States v. Blackmon, 273 F.3d 1204, 1207 (9th Cir. 2001). "The review of the court 'includes an assessment of whether the affidavit attests that adequate investigative tactics were exhausted before the wiretap order was sought or that such methods reasonably appeared unlikely to succeed or too dangerous." United States v. Cosme, 2011 WL 3740337, at *14 (S.D. Cal. Aug. 24, 2011) (quoting Gonzalez, 412 F.3d at 1111). "[T]he affidavit, read in its entirety, must give a factual basis sufficient to show that ordinary investigative procedures have failed or will fail in the particular case at hand." United States v. Spagnuolo, 549 F.2d 705, 710 (9th Cir. 1977).

The Ninth Circuit has adopted a "common sense approach" when reviewing necessity "to evaluate the reasonableness of the government's good faith efforts to use traditional investigative tactics or its decision to forego such tactics based on the unlikelihood of their success or the probable risk of danger involved with their use." Gonzalez, 412 F.3d at 1112 (citing Blackmon, 273 F.3d at 1207). "Government investigators . . . are entitled to use reason and common sense in the performance and documentation of their investigations to support applications for wiretaps. The statute does not mandate the indiscriminate pursuit to the bitter end of every non-electronic device as to every telephone and principal in question to a point where the investigation becomes redundant or impractical or the subjects may be alerted and the entire investigation aborted by unreasonable insistence upon forlorn hope." United States v. Baker, 589 F.2d 1008, 1013 (9th Cir. 1979).

Furthermore, "the government is entitled to more leeway in its investigative methods when it pursues a conspiracy" because it "has a duty to extirpate conspiracy beyond its duty to prevent the mere commission of specific substantive offenses." United States v. McGuire, 307 F.3d 1192, 1198 (9th Cir. 2002). The Ninth Circuit has explained that conspiracies "pose a greater threat to society than individual action toward the same end." Id. at 1197. "Unlike individual criminal action, which comes to an end upon the capture of the criminal, collective criminal action has a life of its own. . . . Reflecting this concern, we have 'consistently upheld findings of necessity where traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to apprehension and prosecution of . . . other satellite conspirators." Id. at

1197-98 (quoting United States v. Torres, 908 F.2d 1417, 1422 (9th Cir. 1990)).

However, the Ninth Circuit has also stated that "[*e*]*ach* wiretap application, standing alone, must satisfy the necessity requirement. Carneiro, 861 F.2d at 1176 (emphasis in original). "The government may not dispense with the statutory mandated showing of necessity to obtain a wiretap [of one conspirator's] telephone, despite the validity of the wiretap of his co-conspirator's telephone." Id. at 1177 (quoting United States v. Brone, 792 F.2d 1504, 1507 (9th Cir. 1986)). On the other hand, the Ninth Circuit has found that although one specific target's situation "was not covered by specific examples of unsuccessful physical surveillance or infiltration," the affidavit "read as a whole reasonably established" as to the specific target and the other targets that other investigative procedures short of electronic surveillance would be unlikely to succeed. Baker, 589 F.2d at 1013.

Defendant argues that the February 25, 2011 affidavit makes no reference to Defendant Gutierrez when it described the various traditional surveillance techniques that had been used to obtain information. [Doc. No. 796-1, Def.'s Mot. at 16-19.] More specifically, Defendant argues that there is no reference to the use of confidential informants, undercover agents, physical surveillance, pen registers/toll records, vehicle tracking devices, and other wiretap investigations to obtain information from Defendant. [Id.] Defendant also argues that the affidavit "makes no attempt state [sic] why these techniques will not be effective with respect to" Defendant. [Id. at 26.]

Defendant acknowledges that the affidavit includes information regarding toll analysis for target telephone 7, which although registered to Defendant's wife, was used by Defendant. [Id. at 17; 12CR0236-TIII-727-28.] Defendant also concedes that the affidavit provides information about three phone calls made from detention centers to Defendant on January 30, February 4, and February 6, 2011, which were recorded by the detention centers. [Doc. No. 796-1, Def.'s Mot. at 14-15.] At the suppression hearing, Defendant argued that because these phone calls were recorded, the Government could not show necessity as to Defendant since the phone calls originating from the detention facilities were already being intercepted. However, according to the Government, Defendant's role in the conspiracy was not only limited to communicating with

inmates. Rather, the Government believed that he "assist[ed] and coordinate[d] in the collection of 'tax' payments due to Espudo." [12CR0236-TIII-702; 12CR0236-TIII-705-06; 12CR0236-TIII-722.] Therefore, interceptions of calls from the detention facilities to target telephone 7 were not sufficient to provide the evidence of conspiracy that the Government sought.

The Court finds that the affidavit, read in its entirety, gives sufficient factual basis to show that ordinary investigative procedures failed or would have failed in the present case. See Spagnuolo, 549 F.2d at 710. The affidavit details several investigative techniques and the reasons why they would not succeed in the present case to obtain the requisite information regarding the conspiracy. Although the affidavit does not delineate how each traditional technique failed or will fail specifically with respect to Defendant, it is not required to do so. See Baker, 589 F.2d at 1013.

The Court also finds that the affidavit satisfies the necessity requirement as to target telephone 7. See Carneiro, 861 F.2d at 1176. The affidavit's explanations of why other investigative techniques would not succeed in the case generally are also applicable to Defendant. See Baker, 589 F.2d at 1013.

Therefore, especially in light of the fact that the Government is entitled to more leeway in its investigative methods when it pursues a conspiracy, see McGuire, 307 F.3d at 1198, the Court finds that the Government adequately demonstrated necessity for target telephone 7. Accordingly, the Court **DENIES** Defendant's motion to suppress on the grounds of necessity.

**III.    Challenges to March 28, 2011 and April 18, 2011 Applications and Orders**

Defendant challenges the March 28, 2011 and April 18, 2011 applications and orders in his motion. [Doc. No. 791-1, Def.'s Mot. at 31-35.] He argues that interceptions pursuant to these orders were unlawful because the applications were "[d]erived [f]rom the [p]rior [i]llegal [i]nterceptions." [Id. at 31-32.] Defendant also argues that the affidavits fail to satisfy the necessity requirement. [Id. at 32.]

As described above, the interceptions pursuant to the February 25, 2011 order were not unlawful. Furthermore, for the same reasons discussed above, the Government satisfied the necessity requirement as to the March 28, 2011 and April 18, 2011 applications. Accordingly, the Court **DENIES** Defendant's motion to suppress as to the March 28, 2011 and April 18, 2011

applications and orders.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Gutierrez's motion to suppress wiretap evidence and derivative evidence, and **DENIES** his request for a Franks hearing.

**IT IS SO ORDERED.**

**DATED:** December 19, 2012

**IRMA E. GONZALEZ**
**United States District Judge**