# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>RUDY ESPUDO *et al.*,<br><br>　　　　　　　Defendants. | CASE NOS. 12-CR-236 - IEG<br><br>**ORDER DENYING ESPUDO'S MOTION TO SUPPRESS WIRETAP EVIDENCE**<br><br>[Doc. No. 974.] |

Before the Court is a motion to suppress wiretap evidence by Defendant Rudy Espudo, which argues that the interception of text messages protected by the marital privilege, the production of all text messages, and that case agents acted as monitors establish insufficient minimization. [Doc. No. 974.] For the reasons below, the motion is **DENIED**.

## BACKGROUND

This case involves charges of conspiracy, racketeering, illegal drug distribution, extortion, and money laundering in connection with the Mexican Mafia prison gang and several affiliated Sureno street gangs operating in northern San Diego county. Espudo filed the present minimization motion to suppress on March 30, 2013. [Doc. No. 974.] The Government responded in its consolidated opposition brief filed on April 8, 2013. [Doc. No. 1004.] The Court heard related oral argument from the parties on April 19, 2013, [Doc. No. 1017], and again on May 16, 2013, at which hearing Federal Bureau of Investigation Special Agent

Mathew Zeman ("Agent Zeman") testified, [Doc. No. 1061].

## DISCUSSION

"Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, allows law enforcement agencies to conduct electronic surveillance of suspected criminal activities." *U.S. v. Garcia-Villalba*, 585 F.3d 1223, 1227 (9th Cir. 2009). But "[t]his authority is not a blank check." *Id.* Wiretaps "pass constitutional muster" only "if certain conditions [a]re met." *United States v. Petti*, 973 F.2d 1441, 1443 (9th Cir. 1992). "Pursuant to section 2518(5), the government must conduct wire intercepts so as to 'minimize the interception of communications not otherwise subject to interception.'" *United States v. Torres*, 908 F.2d 1417, 1423 (9th Cir. 1990) (citing 18 U.S.C. § 2518(5)). "The government has the burden to show proper minimization." *Id*.

"Minimization requires that the government adopt reasonable measures to reduce the interception of conversations unrelated to the criminal activity under investigation to a practical minimum while permitting the government to pursue legitimate investigation." *Id.* But "because of the necessarily ad hoc nature of any determination of reasonableness, there can be no inflexible rule of law that will decide every case." *Id.* "Instead, the question whether the government complied with the statutory requirement to minimize surveillance by wiretap requires examination of the monitoring officers' conduct in light of the particular circumstances of the case." *Id.*

Moreover, "[i]n determining whether the agents properly minimized, it is . . . important to consider the circumstances of the wiretap. For example, when the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise." *Scott*, 436 U.S. at 140. "[I]t may [also] be important to determine at exactly what point during the authorized period the interception was made. During the early stages of surveillance the agents may be forced to intercept all calls to establish categories of nonpertinent calls which will not be intercepted thereafter."

*Id.* at 141; *see also United States v. Quintana,* 508 F.2d 867, 874 (9th Cir. 1975) ("Where the government does not at the outset have reason to believe that any identifiable group of calls will be innocent, then it may be reasonable to monitor all calls for some time."); *United States v. Chavez*, 533 F.2d 491, 4794 (9th Cir. 1976) ("it may not be possible to tell whether a particular conversation is innocent until all of it has been heard . . . it may be necessary to listen to all or substantially all conversation in order to find out how extensive the conspiracy is, who the conspirators are, where and when they meet, how they do business, and other important and often complex details that make up the conspiracy. Thus . . . where it is believed that an extensive conspiracy is going on, it may be necessary, and it does not violate the statute, to listen to nearly all calls on the tapped line.").

By the present motion, Defendant Espudo contends that the interception of text messages was not sufficiently minimized for three reasons: (1) messages protected by the marital privilege were intercepted; (2) all text messages were produced in discovery; and (3) case agents acted as monitors. None warrant suppression.

### 1. Marital Privilege

Espudo points to intercepted text messages protected by the marital privilege as evidence that the wiretap was not sufficiently minimized. The example text messages are between Espudo and his wife Angela Chavez and touch on domestic disputes, infidelity, and contemplated divorce. Espudo's argument is unpersuasive.

First, it is unclear whether the marital privilege even applies. The Ninth Circuit "narrowly construe[s] the marital communications privilege because it obstructs the truth-seeking process." *United States v. Marashi*, 913 F.2d 724, 730 (9th Cir. 1990). "Use of the privilege in criminal proceedings requires a particularly narrow construction because of society's strong interest in the administration of justice." *Id*. Though some of the referenced communications are between husband and wife Espudo and Chavez, others are between Chavez and third-parties. These third-party communications are plainly not privileged. *See Marashi*, 913 F.2d at

730-31 ("the privilege does not extend to statements which are made before, or likely to be overheard by, third parties."). Further, "the marital communications privilege does not apply to statements made in furtherance of joint criminal activity." *Id.* at 731. The particular messages referenced could relate to the alleged criminal conspiracy. Espudo provides no context for the referenced statements, *e.g.*, surrounding texts that may or may not relate to criminal activity. For example, Espudo cites the following exchange:

> 9.18.11    Angel to Rudy: "You are a weak coward and I AM CALLING EVERYONE TO TELL THEM INCLUDING [blocked out] DON"T COME HERE I CHANGED THE LOCKS."

[Doc. No. 974 (Espudo's Motion) at 4.] No context is provided. And, standing alone, to what the text message refers is entirely unclear.

Second, even if the referenced text messages are in fact privileged, the mere inclusion of a number of privileged communications does not establish insufficient minimization. *See United States v. Rivera*, 527 F.3d 891, 904 (9th Cir. 2008) ("The minimization techniques used do not need to be optimal, only reasonable."). "The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to "minimize" the interception of such conversations." *Scott v. United States*, 436 U.S. 128, 140 (1978). Espudo has merely identified a handful of conversations that are perhaps privileged or irrelevant. But he makes no showing in relation to how the surveillance that intercepted those conversations was conducted, much less whether or not it was conducted so as to minimize the interception of irrelevant conversations.

### 2. Release of All Text Messages

Espudo also makes a single sentence argument that "[t]he subsequent unlimited release of all previously minimized-redacted text messages in Discovery 2 is a manifest violation of the interception orders, the Fourth Amendment, and Title III." [Doc. No. 974 at 6.] Espudo cites no authority and makes no attempt to explain why or how the production constitutes a violation of any sort. Moreover, as

the Government asserts, [Doc. No. 1004 at 11], Espudo repeatedly joined motions to compel this very production. [*See* Doc. Nos. 286, 287 (motion to compel production of "the actual seized conversations.").] Thus, Espudo's argument fails as both unsupported and contrary to his own prior requests.

### 3. Agents Also Intermittently Acting As Monitors

Espudo filed a reply brief the day before the April 19, 2013 hearing raising the issue of agents acting as monitors in contravention of the minimization instructions in the wiretap application. [Doc. No. 1014 at 4-5.] The minimization instructions prescribe that intercepted communications "be reviewed and minimized by individuals that are not otherwise associated with th[e] investigation." Espudo contends that "many of the same agents investigating the case acted as monitors" as evidenced by entries in the "monitor log" by, *inter alia*, Agent Zeman who "under the heading 'Role,' wrote, 'monitor.'" [Doc. No. 1014 at 5.]

It is unclear what, if any, significance these entries have, let alone that they necessarily reflect a contravention of the minimization instructions. Even if they do reflect violation of the instructions, their extent remains unclear. But even assuming the entries do establish, as Espudo contends, that on at least several occasions agents failed to completely adhere to the minimization instructions, that showing alone does not warrant suppression on minimization grounds. "Minimization as a process is not subject to the rigid standards appropriate where the process is one of elimination." *United States v. Turner*, 528 F.2d 143, 156 (9th Cir. 1975). "The statute does not require that all conversations unrelated to the criminal activity specified in the order be free from interception." *Id*. "Rather it requires that measures be adopted to reduce the extent of such interception to a practical minimum while allowing the legitimate aims of the Government to be pursued." *Id*. Accordingly, suppression is unwarranted even where "adequate minimization ha[s] been undertaken in a good faith, if not completely successful, effort to limit interception." *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir. 1979).

Here, Espudo appears to concede the adequacy of the minimization

instructions themselves, and does not contend that the instructions were completely or even consistently disregarded in bad faith. Instead, Espudo merely points to several instances in which agents may have been acting as minimization monitors. At most, these instances suggest a somewhat imperfect execution of an adequate minimization protocol, which does not warrant suppression. *See Rivera*, 527 F.3d at 904 ("minimization . . . need [not] be optimal, only reasonable."); *Santora*, 600 F.2d at 1320 (suppression unwarranted where "adequate minimization ha[s] been undertaken [even] if not completely successful").

## CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Espudo's motion to suppress.

**IT IS SO ORDERED.**

**DATED:** May 22, 2013

**IRMA E. GONZALEZ**
**United States District Judge**